H. L. SPARKS, Petitioner,

v.

STATE ELECTION BOARD of Oklahoma, Consisting of Haskell Pugh, Mather Eakes and Frank Reneau, Respondents, Art Griffith, Intervenor.

No. 41025.

Supreme Court of Oklahoma.

May 22, 1964.

Rehearing Denied May 25, 1964.

Application for Leave to File Second Petition for Rehearing Denied June 16, 1964.

Sterling N. Grubbs, Cushing, for petitioner.

Charles R. Nesbitt, Atty. Gen., Harvey H. Cody, Asst. Atty. Gen., Oklahoma City, for respondents.

Everett Berry, Stillwater, for intervenor.

JACKSON, Justice.

The undisputed facts in this original proceeding show that at about 5:30 o'clock P.M., on May 5, 1964, the Precinct Election Board in Clayton Township Precinct six, Payne County, Oklahoma, ran out of printed ballot forms for conducting the Primary Election. Whether the Polls would be closed at 6:00 or 7:00 o'clock P.M.

is not disclosed. It further appears that thereafter six qualified electors presented themselves for the purpose of casting their ballots. The Precinct Election Officials identified six "sample" ballot forms numbering them from 1 to 6, inclusive, and directed said electors to use them as "official" ballot forms.

When the votes were counted by the County Election Board for the Democratic Party nomination for the office of State Representative, Office No. 1, Payne County, it appears that the vote was very close and both candidates, H. L. Sparks and Art Griffith, filed applications for a recount of the ballots. The State Election Board referred the matter to the Payne County Election Board for recount and at the conclusion thereof it appeared that each of the candidates, Sparks and Griffith, had received 4463 votes for the nomination. After certification of the result to the State Election Board that Board announced the result as a "tie" and entered an order directing that the names of such candidates be placed upon the official ballot at the run-off Primary Election to be held in said County on May 26, 1964.

The facts further show that the "tie vote" on recount results from the fact that the six votes cast on "sample" ballot forms were not counted by the County and State Election Boards. Four of those votes were cast in favor of Sparks and two in favor of Griffith.

This action is brought by H. L. Sparks, as petitioner, wherein he seeks to invoke the original jurisdiction of this court for superintending control over the State Election Board under the provisions of Art. 7, Sec. 2, Okla.Const., and prays that a Writ of Mandamus issue to the State Election Board requiring it to count the six ballots cast in *Clayton Township* and requiring said board to issue its Certificate of Nomination to him.

■ The respondents, State Election Board and its members, contend that under the plain provisions of 26 O.S.1961 § 119, that "No sample ballot shall be counted if

voted." Whether the "sample" ballots in this case continued to be sample ballots, or whether they became "official" ballots under the facts here presented is a question of statutory interpretation and is within the realm of judicial inquiry. The purpose of our inquiry is to determine whether these six ballots should have been counted.

■ The statute, 26 O.S.1961 § 119, supra, does provide that no sample ballot shall be counted if voted. This is a salutary provision and was undoubtedly adopted for the purpose of preventing the "stuffing" of ballot boxes with unauthorized ballots and was not adopted for the purpose of disfranchising qualified electors.

■ Petitioner argues that 26 O.S. 1961 § 257, authorizes Precinct Election Officials to prepare handwritten ballots where there is a shortage of official ballots. We do not agree that this section reflects a conscious legislative intent to so provide. This section was adopted to provide procedures where there is a complete breakdown in the election process but it does not specify what action shall be taken when there is a partial breakdown resulting from a shortage of official ballots. However, this section does by implication recognize the constitutional right of qualified electors to vote even under the most primitive and adverse conditions.

26 O.S.1961 § 222, provides that Precinct Election Officials shall be supplied with as many ballots as there are registered electors in the Precinct. Provision is made for substituting ballots for spoiled ballots, 26 O.S.1961 § 255, but Precinct Officials are not directed as to their duties when they have run out of official ballots and time will not permit the printing of additional official ballots.

■ The sovereign power of this state is exercised by its qualified electors who vote. Art. 2, Sec. 1, Okla.Const. The right of a qualified elector to vote is a basic constitutional right, Art. 2, Sec. 4, Okla. Const. To deprive a qualified elector of his right to vote, by law, would be contrary

to the spirit of both Federal (15th Amendment U.S.Const.) and State Constitutions (Art. 1, Sec. 6, Okla.Const.).

In State ex rel. Edwards v. Millar, 21 Okl. 448, 96 P. 747, we quoted with approval from Hirsh v. Wood, 148 N.Y. 142, 143, 42 N.E. 536, 537, as follows:

"We can conceive of no principle which permits the disfranchisement of innocent voters for the mistake or even the willful misconduct of election officers in performing the duty cast upon them. The object of elections is to ascertain the popular will, and not to thwart it. The object of election laws is to secure the rights of duly qualified electors, and not to defeat them. Statutory regulations are enacted to secure freedom of choice and to prevent fraud, and not by technical obstructions to make the right of voting insecure and difficult."

Undoubtedly Section 119, supra, does not reflect a conscious legislative intendment that qualified electors would be deprived of their right to vote because of a shortage of official ballot forms. Since the right to vote is a constitutional right we are of the view that it was the duty of the Precinct Election Officials to provide ballots. They did so by authorizing the use of "sample ballots." While handwritten ballots would not have been contrary to the provisions of Sec. 119, supra, we are of the view that under the emergency situation here presented that there is no conscious legislative intendment that these ballots should be voided. No fraud or improper motive is charged, and none has resulted. No evil was intended and none has resulted. Under the circumstances presented in this case the constitutional right to vote outweighs the form of the ballot, and the sample ballots as used in this case were in fact and in law converted into acceptable and legal ballots. They reflect the will of the electors to whom they were furnished, and accurately record their votes. We must conclude that they should be counted by the State Election Board and given weight.

In Ruth v. Peshek, 153 Okl. 147, 153, 5 P.2d 108, which involved an initiative petition to amend a city charter, we said:

"Technical rules of construction are not favored either by this court or by the Legislature in passing upon the rights of the people to govern themselves. Rules are not the ultimate end—the main thing is justice itself and the very right of the matter. Rules are only in aid of the main thing—the working tools whereby it is attained. The administration of justice is a practical affair, an invention for the adjustment of the rights of individuals, and is not a technical and accurate science, but an applied science, adjusting itself to work out justice in all the protean shapes the dealings of mankind assume."

"* * * If the people are to be self-governed, it is essential that they shall have a right to vote upon questions of public interest and register the public will."

Section 119, supra, was designed to protect the purity of the ballot and not as a tool or instrument to impair constitutional rights.

It is contended by the respondent, State Election Board, that this court has no jurisdiction to determine the question here presented, and it invites attention to 26 O.S.1961 § 391, wherein it is provided in part:

"* * * upon the completion of such (recount) hearing, the election board shall render its decision, and such decision shall be final and conclusive of all rights involved. * * * no appeal to or review by the court shall ever be taken or had from any final decision of the proper board so had governing any primary election * *.

"No court shall have jurisdiction of or authority to issue any enjoinder, proceeding, mandamus or process to

inquire into, review or control the action of any election board pertaining to primary elections * * *."

In Art. 7, Sec. 2, Okla.Const., it is provided in part:

"* * * The original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all commissions and boards created by law. The Supreme Court shall have power to issue writs of habeas corpus, mandamus, quo warranto, certiorari, prohibition, and such other remedial writs, as may be provided by law, and to hear and determine the same; * * *."

In Looney v. County Election Board, 146 Okl. 207, 210, 293 P. 1056, 1059, we held:

"The Legislature cannot deprive this court of its right of superintending control over inferior courts, commissions, and boards which are exercising judicial or quasi judicial authority as granted by section 2, article 7, of the Constitution of this state; but this superintending control is exercised, not by appeal, nor proceedings in the nature thereof, but by the issuance of remedial writs, named in the Constitution, and such others as may be provided by law."

■ Mandamus is one of the writs authorized by Art. 7, Sec. 2, supra, as a "remedial" writ, and the final interpretation of a statute, as applied to stipulated facts, authorizes the exercise of judicial authority.

■ Respondent, State Election Board, invites our attention to Wagoner County Election Board v. Plunkett, Okl., 305 P.2d 525, as supporting the view that no court has jurisdiction to review a final decision of an election board in recount proceedings involving a primary election. That case involved the question of whether a district court has jurisdiction to review a primary election contest. We held that the district court did not have jurisdiction to review because it is deprived of such jurisdiction by the provisions of Sec. 391, supra, and 12. O.S.1961 § 1531. We therefore vacated the order and judgment of the district court. There was no occasion in that case to determine whether portions of Section 391, supra, were in conflict with our constitution-granted jurisdiction of superintending control over all inferior courts, boards and commissions. Our original jurisdiction of superintending control was not invoked in that case. In the instant case our original jurisdiction has been invoked.

■ Some contention is made that these six additional ballots were given distinguishing marks (1 to 6, inclusive) and for that reason should not be counted. The facts show that these distinguishing marks were made without improper motives by the Precinct Election Officials, and not by the electors using the ballots. We find no merit in this contention. Town of Eufaula v. Gibson, 22 Okl. 507, 98 P. 565.

Art Griffith, as intervenor, invites our attention by his petition in intervention and in oral argument to three ballots which were challenged by intervenor. It is asserted that two of those ballots were counted for Sparks and that one of such ballots did not contain a mark opposite the name of Sparks and that the other contained an unidentifiable smear across the box. The third ballot, it is asserted, was in favor of Griffith; that it contained an "X" in the box opposite his name but that the Election Board rule that it was a blur or smudge. It is said that the challenge to these three ballots required an interpretation by the Election Board of the intent of the voter to vote for one candidate or the other. Whether these alleged errors may be reached under our superintending control has not been briefed and we express no opinion thereon. However, in oral argument these three ballots were exhibited to us for our examination and we are unable to say from our examination of these ballots that the State Election Board erred in its interpretation of the intention

of the voters to vote for one candidate or the other.

 Having concluded that the original jurisdiction of this court has been invoked, and having concluded that the six ballots furnished by the Precinct Election Officials should be counted as valid, it follows that the Writ of Mandamus must be directed to the State Election Board to treat them as valid and to further proceed with its duties as provided by the election laws of this State, and it is so ordered.

BLACKBIRD, C. J., HALLEY, V. C. J., and DAVISON, JOHNSON, WILLIAMS and IRWIN, JJ., concur.