OSCN Found Document:GENTGES v. OKLAHOMA STATE ELECTION BOARD

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 GENTGES v. OKLAHOMA STATE ELECTION BOARD
2014 OK 8
Case Number: 111290
Decided: 02/11/2014
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2014 OK 8, __ P.3d __


DELILAH CHRISTINE GENTGES, an individual, Plaintiff/Appellant,
v.
OKLAHOMA STATE ELECTION BOARD, Defendant/Appellee,
and
SENATOR BRIAN BINGMAN, in his official capacity as President Pro Tempore of the OKLAHOMA STATE SENATE, REPRESENTATIVE KRIS STEELE in his official capacity as the Speaker of the OKLAHOMA HOUSE OF REPRESENTATIVES, Intervenor Defendants/Appellees.



APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY
HONORABLE LISA TIPPING DAVIS, TRIAL JUDGE



¶0 Registered Voter brought an action against the State Election Board to prevent implementation of SB 692, commonly known as the Voter ID Act. Registered Voter contended the Legislature violated the Oklahoma Constitution by submitting the Voter ID Act to a popular vote without first presenting it to the Governor for veto consideration. Registered Voter also contended that requiring voters to present certain forms of identification in order to vote would "interfere to prevent the free exercise of the right of suffrage." Such interference is forbidden by Article 2, section 4 and Article 3, section 5 of the Oklahoma Constitution. After review of the parties' summary judgment paperwork, the trial court ruled (1) the Oklahoma Constitution does not require presentment of a legislative referendum to the Governor before the referendum is placed on the ballot for a vote, and (2) Registered Voter lacked standing. Upon appeal by Registered Voter, this Court retained the appeal.



AFFIRMED IN PART; REVERSED IN PART.



James C. Thomas, William D. Thomas, THOMAS LAW FIRM PLLC, Tulsa, Oklahoma for Plaintiff/Appellant,
M. Daniel Weitman, Assistant Attorney General, Oklahoma City, Oklahoma for Oklahoma State Election Board, Defendant/Appellee,
Lee Slater, James A. Williamson, Oklahoma City, Oklahoma for Brian Bingman, in his capacity as President Pro Tempore of the Oklahoma State Senate, Intervenor Defendant/Appellee,
Ashley D. Kemp, General Counsel, Oklahoma House of Representatives, Oklahoma City, Oklahoma for Kris Steele in his capacity as Speaker of the Oklahoma House of Representative, Intervenor Defendant/Appellee, and Andrew W. Lester, Carrie L. Vaughn, Lester, Loving & Davies, P.C., Edmond, Oklahoma for Kris Steele in his capacity as Speaker of the Oklahoma House of Representatives, Intervenor Defendant/Appellee.




REIF, V.C.J.:


¶1 Delilah Christine Gentges sued the Oklahoma State Election Board in the district court of Tulsa County to prevent implementation of SB 692, commonly known as the Voter ID Act.[1] Ms. Gentges alleged she had standing as a taxpayer and as a registered voter in Tulsa County. The State Election Board specially appeared in the district court of Tulsa County and asked the court to dismiss this suit. The State Election Board contended Ms. Gentges lacked standing and Tulsa County was not the proper venue for a suit against a State agency. The district court of Tulsa County rejected these challenges and the State Election Board asked this Court to assume original jurisdiction to prohibit the district court of Tulsa County from proceeding further. This Court granted partial relief by ordering the district court of Tulsa County to transfer the case to the district court of Oklahoma County.

¶2 Following the transfer of the case to Oklahoma County, Ms. Gentges filed a motion for summary judgment. She asked the court to declare the Voter ID Act unconstitutional on the grounds that (1) the Legislature violated Article 6, Section 11[2] of the Oklahoma Constitution by not presenting the referendum designated SB 692 to the Governor for veto consideration prior to submitting it for a popular vote, and (2) the identification requirements "interfere to prevent the free exercise of the right of suffrage" that is prohibited by Article 2, Section 4[3] and Article 3, Section 5[4] of the Oklahoma Constitution. After review of the parties' summary judgment paperwork, the trial court ruled (1) the Oklahoma Constitution did not require presentment of a legislative referendum to the Governor before the referendum is placed on the election ballot for a vote and (2) Ms. Gentges "lacks standing." Upon review, we hold that Ms. Gentges does have standing to challenge the constitutionality of the Voter ID Act but find the Act was properly submitted for a popular vote. We remand for the trial court to determine whether the identification requirements "interfere to prevent the free exercise of the right of suffrage" and to decide Ms. Gentges' constitutional challenge to the venue requirement in 12 O.S.2011, § 133.

¶3 The parties agree that there are no material issues of fact in dispute on the issues of standing and the referendum. They further agree that only questions of law are presented for resolution. The issue of Ms. Gentges' standing is the first question of law to be determined.

¶4 The trial court's summary judgment order specifically decided one of the issues raised by Ms. Gentges' motion for summary judgment - whether the Oklahoma Constitution requires the Legislature to present a referendum, like SB 692, to the Governor for veto consideration prior to submitting the measure for a popular vote. The trial court ruled that "the Constitution does not require presentment of a legislative referendum to the Governor before the referendum is placed on the election ballot for a vote." In granting this declaratory relief the trial court must have necessarily concluded that Ms. Gentges had standing to litigate the issue of whether the Voter ID Act was validly enacted. In other words, she was not totally without standing.

¶5 The part of the trial court's summary judgment order that ruled Ms. Gentges "lacks standing" can only be read to apply to her complaint that the Voter ID Act would "interfere to prevent the free exercise of the right of suffrage." In challenging Ms. Gentges' standing to litigate this issue, the State Election Board argued that Ms. Gentges cannot rely on her status as a taxpayer to challenge the Voter ID Act, because the Voter ID Act involves no expenditure of public funds. In the absence of such a circumstance to support standing, the State Election Board has maintained that Ms. Gentges must show that she suffers injury from having to present a photo ID to vote. The State Election Board's summary judgment evidentiary material established that Ms. Gentges possesses a valid photo Oklahoma drivers license. The State Election Board insists that this undisputed fact demonstrates Ms. Gentges can easily comply with the Act without any additional burden upon, or injury to, either her right to vote or her act of voting.

¶6 The State Election Board is correct that Ms. Gentges' status as a taxpayer is not sufficient to support standing to challenge the Voter ID Act. However, her possession of a valid photo Oklahoma drivers license is no more relevant to her standing to challenge the constitutionality of the Voter ID Act than her financial means to pay a poll tax would be relevant to challenge a burden of that nature.

¶7 In cases where "[n]o government expenditure is challenged," this Court has recognized judicial discretion "[to] grant standing to private parties to vindicate the public interest in cases presenting issues of great public importance." State ex rel. Howard v. Oklahoma Corporation Commission, 1980 OK 96, ¶ 29, ¶ 31, 614 P.2d 45, 51 (citation omitted). This discretion is properly exercised to grant standing where there are "competing policy considerations" and "lively conflict between antagonistic demands." Id. at ¶¶ 37-38, 614 P.2d at 52 (citations omitted).

¶8 In addition, this Court has said "a suit may be brought [by a private party] challenging the legality of government action . . . if the plaintiff is the object of the action at issue." Oklahoma Public Employees Association v. Oklahoma Department of Central Services, 2002 OK 71, ¶ 16, 55 P.3d 1072, 1079. In such cases, "there is ordinarily little question that the action . . . has caused . . . injury, and that a judgment preventing or requiring the action will redress it." Id.

¶9 In the case at hand, the requirement that voters present certain types of identification at the time of voting is a new condition upon the exercise of the right of suffrage. The question of whether this new condition would "interfere to prevent the free exercise of the right of suffrage" is a matter of "great public importance" given the fact that "free exercise of the right of suffrage" is guaranteed by two provisions in the Oklahoma Constitution. The first provision - Article 2, § 4 - appears in the Bill of Rights and is a guarantee extended to "those entitled to such right." This Court has said the right to vote conferred upon a qualified elector by this constitutional provision is "a basic constitutional right." Sparks v. State Election Board, 1964 OK 114, ¶ 9, 392 P.2d 711, 713. The second provision - Article 3, § 5 - expresses a limitation on governmental power. The importance of this limitation is underscored by the observation in Sparks that: "To deprive a qualified elector of his [or her] right to vote, by law, would be contrary to the spirit of both Federal . . . and State Constitutions." Id., 392 P.2d at 713-714.

¶10 There can be no doubt that Ms. Gentges, as a registered voter, is within the class of "those entitled" to exercise the right of suffrage and has a basic constitutional right protected by Article 2, § 4. Members of this class (i.e., registered voters) are likewise the most logical parties to contest any conditions on the right to vote imposed by action of the Legislature, because registered voters are "the object of the action at issue."

¶11 Review of the summary judgment record also reveals this case involves "competing policy considerations" (i.e., preservation of the integrity of the election process by verifying the identity of those voting vs. the free exercise of the right of suffrage). Furthermore, the arguments advanced by Ms. Gentges and the State Election Board demonstrate "lively conflict between antagonistic demands."

¶12 The foregoing considerations lead this Court to conclude that Ms. Gentges has standing to vindicate both her personal interest and the public interest by challenging legislative action that may arguably "interfere to prevent the free exercise of the right of suffrage." Accordingly, we reverse the trial court ruling that Ms. Gentges "lacks standing" to challenge the Voter ID Act on the ground it would "interfere to prevent the free exercise of the right of suffrage."

¶13 We do not agree, however, with Ms. Gentges' contention that the provisions of SB 692 were not properly enacted as a referendum. Ms. Gentges insists that the fatal defect in the enactment of SB 692 lies in the Legislature's failure to present the measure to the Governor for veto consideration prior to its submission to a vote of the people. While she acknowledges that the Governor has no power to veto a referendum after it is approved by a vote of the people, she maintains that a bill proposing a referendum must be presented to the Governor for veto consideration prior to its submission for a popular vote.

¶14 Ms. Gentges relies on language in Article 5, § 2 of the Oklahoma Constitution that authorizes the Legislature to order a referendum "as other bills are enacted." Ms. Gentges further notes that Article 6, § 11 of the Oklahoma Constitution requires the Legislature's presentment and the Governor's veto consideration of "Every bill which shall have passed the Senate and House of Representatives." She points out that this Court has recently interpreted the "every bill" language in Article 6, § 12 (a related veto provision) to mean "any" and "all" bills. Coffey v. Henry, 2010 OK 4, ¶ 3, 240 P.3d 1056, 1057.

¶15 Despite the logical appeal of this analysis, its chief problem lies in giving literal meaning to the single word "every" and ignoring important qualifying language in Article 6, § 11. The complete text of the presentment clause in Article 6, § 11 reads: "Every bill which shall have passed the Senate and House of Representatives, and every resolution requiring the assent of both branches of the Legislature, shall, before it becomes a law, be presented to the Governor." The important qualifying language in question is "before it becomes a law." The complete text clearly indicates that presentment and veto consideration is required for "every bill" that "becomes law" through the Legislature's exercise of its granted sovereign power. This is not the only sovereign power by which law is made, however.

¶16 The first two sections of Article 5[5] of the Oklahoma Constitution reserve sovereign power to the people to make law by a process that is different from, and in addition to, the exercise of sovereign power granted to the Legislature. That process is by initiative and referendum. Sections 3 through 8 of Article 5 specify how this process is to be fulfilled. Section 3 of Article 5[6] prescribes a very different role for the Governor to play in this law making process than the role played by the Governor in the Legislature's law making process. In particular, section 3 commands that the Governor "shall submit [petitions and orders for initiatives and referendums] to the people" and expressly provides that "The veto power of the Governor shall not extend to measures voted on by the people."

¶17 As previously noted, Ms. Gentges acknowledges this limitation on the Governor's veto power, but contends it should be interpreted to apply only after a measure has been approved by the people. To support this interpretation, Ms. Gentges basically argues that the enactment of law without the check and balance of a veto violates the guarantee of a republican form of government set forth in Article IV, § 4[7] of the United States Constitution. Ms. Gentges believes that presentment and veto consideration prior to submitting a referendum to a vote of the people is the only way for the people to enact law consistent with a republican form of government.

¶18 Again, despite the logical appeal of this argument, settled law dictates that the check and balance of the veto is very much a part of a referendum ordered by the Legislature. In the case of In re Initiative Petition No. 348, State Question No. 640, 1991 OK 110, ¶ 29, 820 P.2d 772, 780, this Court cited approvingly Kadderly v. City of Portland, 44 Or. 118, 145-46, 74 P. 710, 720, for the principle that the power of the people "[to] veto or defeat bills passed and approved by the Legislature" is part of the republican form of government. This is particularly true of a referendum by Legislative order in which the Legislature merely recommends the people enact a particular measure. In such cases, the check and balance of the veto is preserved; it is simply exercised by the electorate, not the Governor.

¶19 The state of the record does not permit this Court to decide whether the identification requirements of SB 692 "interfere to prevent the free exercise of the right of suffrage." We note that Ms. Gentges' motion for summary judgment reserves this issue as a "factual question." Also, in their response to Ms. Gentges' motion for this Court to retain this appeal, the State Election Board and the Intervenors have argued that this reservation by Ms. Gentges prevents the "the substantive constitutionality of the Voter ID Act . . . from being reviewed for the first time in this accelerated appeal."

¶20 In remanding this issue to the trial court, however, we believe it provident to provide guidance to the trial court in resolving this controversy. We do so to ensure a complete record is made and because the decision resolving an alleged constitutional violation is reviewed de novo. See Fields v. Saunders, 2012 OK 17, ¶ 1, 278 P.3d 577, 579.

¶21 "When considering the constitutionality of an act of the legislature, all pertinent constitutional provisions must be considered together." Fent v. State ex rel. Office of State Finance, 2008 OK 2, ¶ 21, n.11, 184 P.3d 467, 476 (citing Tate v. Logan, 1961 OK 136, ¶ 5, 362 P.2d 670, 672). The free exercise protections of Article 2, § 4 and Article 3, § 5 must be considered with the Legislature's constitutional power to provide laws for conducting elections and to detect fraud in such elections set forth in Article 3, § 4 of the Oklahoma Constitution. This provision expressly provides that: "The Legislature shall prescribe the time and manner of holding and conducting all elections, and enact such laws as may be necessary to detect and punish fraud in such elections." (emphasis added). While the people have made it clear by constitutional command that they do not want the civil or military power of the State to interfere to prevent the free exercise of the right of suffrage, the people have made it equally clear by a coordinate constitutional command that they want the right of suffrage protected from fraud. Any assessment of the impact of statutory law on the exercise of the right of suffrage must accommodate both of these policies.

¶22 Also, laws governing the right to vote must "be reasonable and not destructive to some constitutional right." Swindall v. State Election Board, 1934 OK 259, ¶ 0, 32 P.2d 691 (syllabus 1). One test is whether the voting law "was designed to protect the purity of the ballot and not as a tool or instrument to impair constitutional rights." Sparks, 1964 OK 114, ¶ 13, 392 P.2d at 714.

¶23 This guidance in no way limits the issues nor precludes the trial court from considering other law or matters that may bear on the constitutionality of the Voter ID Act. It simply represents the baseline scrutiny the trial court must give to resolve this constitutional controversy.

¶24 Based on the foregoing consideration, we affirm the trial court's ruling that the Voter ID Act was validly enacted, but reverse the trial court's ruling that Ms. Gentges lacks standing to challenge the Voter ID Act on the ground that it violates the free exercise of suffrage provisions in the Oklahoma Constitution. We remand this case to the trial court to decide Ms. Gentges' constitutional challenges to the Voter ID Act and to the venue provision in 12 O.S.2011, § 133.


AFFIRMED IN PART; REVERSED IN PART.



¶25 COLBERT, C.J., REIF, V.C.J., WATT, WINCHESTER, EDMONDSON, TAYLOR, and GURICH, JJ., concur.

¶26 KAUGER and COMBS (by separate writing), JJ., concur in result.



FOOTNOTES


[1] SB 692 was submitted to a vote of the people as State Question 746, Legislative Referendum 347. This measure was approved by a vote of the people November 2, 2010. Laws 2009, c.31, §§ 1-9. It is codified as 26 O.S.2011, § 7-114.



[2] Article 6, § 11 states: Approval or veto of bills - Passage over veto - Failure to return bill.

Every bill which shall have passed the Senate and House of Representatives, and every resolution requiring the assent of both branches of the Legislature, shall, before it becomes a law, be presented to the Governor; if he approve, he shall sign it; if not, he shall return it with his objections to the house in which it shall have originated, who shall enter the objections at large in the Journal and proceed to reconsider it. If, after such reconsideration, two-thirds of the members elected to that house shall agree to pass the bill or joint resolution, it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered; and, if approved by two-thirds of the members elected to that house, it shall become a law, notwithstanding the objections of the Governor. In all such cases, the vote in both houses shall be determined by yeas and nays, and the names of the members voting shall be entered on the Journal of each house respectively. If any bill or resolution shall not be returned by the Governor within five days (Sundays excepted) after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the Legislature shall, by their adjournment, prevent its return, in which case it shall not become a law without the approval of the Governor. No bill shall become a law after the final adjournment of the Legislature, unless approved by the Governor within fifteen days after such adjournment.



[3] Article 2, § 4 states: Interference with right of suffrage.

No power, civil or military, shall ever interfere to prevent the free exercise of the right of suffrage by those entitled to such right.



[4] Article 3, § 5 states: Free and equal elections - Interference by civil or military power - Privilege from arrest.

All elections shall be free and equal. No power, civil or military, shall ever interfere to prevent the free exercise of the right of suffrage, and electors shall, in all cases, except for treason, felony, and breach of the peace, be privileged from arrest during their attendance on elections and while going to and from the same.



[5] The first two sections in Article 5, are as follows:

§ 1. Legislature - Authority and composition - Powers reserved to people.

The Legislative authority of the State shall be vested in a Legislature, consisting of a Senate and a House of Representatives; but the people reserve to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature.

§ 2. Designation and definition of reserved powers - Determination of percentages.

The first power reserved by the people is the initiative, and eight per centum of the legal voters shall have the right to propose any legislative measure, and fifteen per centum of the legal voters shall have the right to propose amendments to the Constitution by petition, and every such petition shall include the full text of the measure so proposed. The second power is the referendum, and it may be ordered (except as to laws necessary for the immediate preservation of the public peace, health, or safety), either by petition signed by five per centum of the legal voters or by the Legislature as other bills are enacted. The ratio and per centum of legal voters hereinbefore stated shall be based upon the total number of votes cast at the last general election for the Office of Governor.



[6] Article 5, § 3 states: Petitions - Veto power - Elections - Time of taking effect - Style of bills - Duty of legislature

Referendum petitions shall be filed with the Secretary of State not more than ninety (90) days after the final adjournment of the session of the Legislature which passed the bill on which the referendum is demanded. The veto power of the Governor shall not extend to measures voted on by the people. All elections on measures referred to the people of the state shall be had at the next election held throughout the state, except when the Legislature or the Governor shall order a special election for the express purpose of making such reference. Any measure referred to the people by the initiative or referendum shall take effect and be in force when it shall have been approved by a majority of the votes cast thereon and not otherwise.

The style of all bills shall be: "Be it Enacted By the People of the State of Oklahoma."

Petitions and orders for the initiative and for the referendum shall be filed with the Secretary of State and addressed to the Governor of the state, who shall submit the same to the people. The Legislature shall make suitable provisions for carrying into effect the provisions of this article.



[7] U.S.C.A. Const. Art. IV § 4 states: Section 4. Republican Government

Section 4. The United States shall guarantee to every State in this Union a Republican Form of Government, and shall protect each of them against Invasion; and on Application of the Legislature, or of the Executive (when the Legislature cannot be convened) against domestic Violence.






COMBS, J., with whom KAUGER, J., joins, concurring in result: 


¶1 I concur in the majority opinion that the plaintiff in this case has standing to challenge the constitutionality of the Oklahoma Voter ID Act. I further concur in the majority opinion in that the Oklahoma Constitution does not require the Legislature to present a referendum, like SB 692, to the Governor for veto consideration prior to submitting the measure for a popular vote.

¶2 I additionally concur that the issue of the constitutionality of the Voter ID Act is not properly before this court for review at this time. The trial court's ruling reflects the only issues addressed were the plaintiff's lack of standing and that the Voter ID statute did not have to be presented to the Governor before it was submitted to a vote of the people. There is nothing in this record to reflect the trial court ruled on the issue of the facial constitutionality of the Voter ID Act. In truth and fact the record is very clear the trial court determined only two issues: 1) the plaintiff's standing or lack thereof; and 2) a finding that there is no constitutional requirement that a referendum be submitted to the Governor for consideration prior to a popular vote.

¶3 The majority, having determined the plaintiff has standing, remands this case to the trial court to address all remaining issues, including any issue concerning the merits of the Voter ID Act. I disagree, however, with the majority's attempt to frame the issues for the trial court on remand. The litigants should be allowed to try their case before the lower court without any indication what the appellate court would like to be considered. Our case law is clear: in a public law controversy this court is free to change the theory presented by the parties below and followed by the trial court.[1] However this review must be based upon the record brought for review.

¶4 As this court stated in Russell v. Board of County Commissioners, 1997 OK 80, ¶ 10, 952 P.2d 492, 497:



[w]hen resolving a public-law controversy, the reviewing court is generally free to grant corrective relief upon any applicable legal theory dispositive of the case. Appellate freedom to raise and settle public-law issues sua sponte is circumscribed not by arguments tendered by the parties but rather by the record brought for review. (Emphasis applied.)



¶5 Although I agree with the majority that the constitutionality of the Voter ID Act is of great public interest and any ruling of the trial court concerning the Act's constitutionality will be reviewed by this court using a de novo standard without deference to the decision of the trial court, that review must be based on the record. Here we have no decision by the trial court on this issue. The trial court order is silent as to the constitutionality of the Voter ID Act. The Attorney General's position assailing the deviation of our summary judgment procedure is well taken. There are only two issues before us at this time.

¶6 Addressing the facial constitutionality of the Voter ID Act without a record, evidentiary materials, or a final order is a precedent we should not set. The litigants should be allowed to fully litigate their respective positions without prior indication from this court as to what issues we feel are important to the discussion. To do otherwise, is to issue an advisory opinion and attempt to limit or at the least emphasize certain constitutional issues in the trial court. I would let the parties argue their respective positions and develop their own record without any specific direction as to issues by this court.


FOOTNOTES


[1] Jackson v. Oklahoma Memorial Hosp., 1995 OK 112, ¶ 5 , 909 P.2d 765 , 768; North Side State Bank v. Board of County Comm'rs of Tulsa County, 1994 OK 34 , 894 P.2d 1046 , 1050 n. 8; Schulte Oil Co., Inc. v. Oklahoma Tax Com'n, 1994 OK 103 , 882 P.2d 65 , 69 n. 8; Strelecki v. Oklahoma Tax Com'n, 1993 OK 122 , 872 P.2d 910 , 920 n. 66; Simpson v. Dixon, 1993 OK 71 , 853 P.2d 176 , 187 n. 55; McNeely, Matter of, 1987 OK 19, ¶ 4 , 734 P.2d 1294 , 1296; Reynolds v. Special Indem. Fund, 1986 OK 64, ¶ 14, 725 P.2d 1265 , 1270; Burdick v. Independent Sch. Dist. No. 52 of Oklahoma County, 1985 OK 49 , 702 P.2d 48 , 54 n. 10; McCracken v. City of Lawton, 1982 OK 63 , 648 P.2d 18 , 21 n. 11; Application of Goodwin, 1979 OK 106, ¶ 2, 597 P.2d 762 , 764; Special Indemnity Fund v. Reynolds, 1948 OK 14, ¶ 6, 188 P.2d 841 , 842.










 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Supreme Court Cases Cite
Name
Level 1986 OK 64, 725 P.2d 1265, 57 OBJ 2357, Reynolds v. Special Indem. Fund
Discussed 1987 OK 19, 734 P.2d 1294, 58 OBJ 714, McNeely, Matter of
Discussed 1991 OK 110, 820 P.2d 772, 62 OBJ 3387, Initiative Petition No. 348, State Question No. 640, In re
Discussed 1993 OK 71, 853 P.2d 176, 64 OBJ 1721, Simpson v. Dixon
Discussed 1993 OK 122, 872 P.2d 910, 64 OBJ 2885, Strelecki v. Oklahoma Tax Com'n
Discussed 1994 OK 103, 882 P.2d 65, 65 OBJ 3046, Schulte Oil Co., Inc. v. Oklahoma Tax Com'n
Discussed 1994 OK 34, 894 P.2d 1046, 65 OBJ 1195, North Side State Bank v. Board of County Comm'rs of Tulsa County
Discussed 1997 OK 80, 952 P.2d 492, 68 OBJ 2217, RUSSELL v. BOARD OF COUNTY COMMISSIONERS
Discussed 1961 OK 136, 362 P.2d 670, TATE v. LOGAN
Discussed 1964 OK 114, 392 P.2d 711, SPARKS v. STATE ELECTION BOARD
Discussed at Length 1934 OK 259, 32 P.2d 691, 168 Okla. 97, SWINDALL v. STATE ELECTION BD.
Discussed 2002 OK 71, 55 P.3d 1072, OKLAHOMA PUBLIC EMPLOYEES ASSOCIATION v. OKLAHOMA DEPT. OF CENTRAL SERVICES
Discussed 1995 OK 112, 909 P.2d 765, 66 OBJ 3292, Jackson v. Oklahoma Memorial Hosp.
Discussed 2008 OK 2, 184 P.3d 467, FENT v. STATE ex rel. OFFICE OF STATE FINANCE
Discussed 2010 OK 4, 240 P.3d 1056, COFFEE v. HENRY
Discussed 2012 OK 17, 278 P.3d 577, FIELDS v. SAUNDERS
Discussed 1980 OK 96, 614 P.2d 45, State ex rel. Howard v. Oklahoma Corp. Commission
Discussed 1979 OK 106, 597 P.2d 762, APPLICATION OF GOODWIN
Discussed 1982 OK 63, 648 P.2d 18, McCracken v. City of Lawton
Discussed 1948 OK 14, 188 P.2d 841, 199 Okla. 570, SPECIAL INDEM. FUND v. REYNOLDS
Discussed 1985 OK 49, 702 P.2d 48, Burdick v. Independent School Dist. No. 52 of Oklahoma County
Discussed
Title 12. Civil Procedure Cite
Name
Level 12 O.S. 133, Certain Causes Required to be Brought in the County Where Cause or Some Part Thereof Arose
Discussed
Title 26. Elections Cite
Name
Level 26 O.S. 7-114, Procedure for Determining Eligibility - Proof of Identity - Penalty for False Swearing or Affirming Under Oath
Cited