OSCN Found Document:GENTGES v. OKLAHOMA STATE ELECTION BOARD

 

 
 

 
 GENTGES v. OKLAHOMA STATE ELECTION BOARD
2018 OK 39
Case Number: 115440
Decided: 05/08/2018
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2018 OK 39, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

DELILAH CHRISTINE GENTGES, an individual Appellant,
v.
OKLAHOMA STATE ELECTION BOARD, Appellee.

ON APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY,
STATE OF OKLAHOMA

HONORABLE ALETIA HAYNES TIMMONS

Â¶0 Appellant brought an action against the State Election Board challenging the constitutionality of the Oklahoma "Voter ID Act." The district court found that the Voter ID Act and the state venue statute, requiring the action to be brought in Oklahoma County, are constitutional. Appellant appealed and this Court retained the appeal.

ORDER OF THE DISTRICT COURT IS AFFIRMED.

James C. Thomas and William D. Thomas, Thomas Law Firm, PLLC, Tulsa, Oklahoma, for Appellant,

M. Daniel Weitman, Assistant Attorney General, Oklahoma Attorney General's Office, Oklahoma City, Oklahoma, for Appellee.

Per Curiam. 

Â¶1 The issue in this matter is whether the Oklahoma "Voter ID Act,"[1] Okla. Stat. tit. 26, Â§ 7-114 (2010), and the Oklahoma venue statute, Okla. Stat. tit. 12, Â§ 133 (2011), are constitutional. We find both statutes constitutional and affirm the District Court's judgment.

I. FACTUAL AND PROCEDURAL HISTORY

Â¶2 Prior to the Oklahoma Voter ID Act, Title 26, Section 7-114 simply required that "[e]ach person presenting himself to vote shall announce his name to the judge of the precinct, whereupon the judge shall determine whether said person's name is in the precinct registry." Okla. Stat. tit. 26, Â§ 7-114 (2001). In April 2009, the Oklahoma Legislature passed S.B. 692, and referred it for a vote of the people as State Question 746, Legislative Referendum 347. 2009 Okla. Sess. Laws 126-31, 2612. The Voter ID Act was approved by a vote of the people on November 2, 2010 and was codified at Title 26, Â§Â§ 7-114,[2] 7-116.1, 14-115.4, 14-121, 16-120 (2010).

Â¶3 The Voter ID Act amended Section 7-114 to require that voters provide proof of identity in the form of a document issued by the United States, the State of Oklahoma, or the government of a federally recognized Indian tribe or nation that shows: 1) the name of the person to whom it was issued (substantially conforming to the name in the precinct registry); 2) a photograph of the person to whom it was issued; and 3) an expiration date after the present election (unless the identification belongs to someone over the age of 65 and is valid indefinitely). Okla. Stat. tit. 26, Â§ 7-114 (2010).[3] The Voter ID Act provides, in the alternative, that the person may present the voter identification card issued by the appropriate county election board. Id. The Voter ID Act provides that if a person is unable or unwilling to produce proof of identity, the person may sign a statement under oath swearing that they are the person identified on the precinct registry and then the person will be allowed to cast a provisional ballot. Id.[4] 

Â¶4 Appellant brought an action in Tulsa County District Court against the State Election Board contending that the Voter ID Act is unconstitutional as an interference with the free right to suffrage and equivalent to a poll tax.[5] In October 2015, following transfer of the case to the Oklahoma County District Court, Appellant filed a motion for summary judgment and Appellee filed a combined response and counter-motion for summary judgment. The Oklahoma County District Court held a hearing on the competing motions and determined that venue was proper in Oklahoma County, that there was no evidence of any voter fraud in Oklahoma, and that there was a question of fact regarding the impact of the Voter ID Act on the right to suffrage which would be determined in an evidentiary hearing.

Â¶5 In August 2016, the district court held an evidentiary hearing on the effect of the Voter ID Act in Oklahoma. Evidence was presented that a quarter of the population of the State of Oklahoma lacks a driver's license or DPS issued identification. However, that percentage did not subtract the portion of the population under the age of 18, making it an inaccurate rendition of how many citizens of voting age have DPS identifications and did not account for other forms of acceptable identification. The free voter identification card, that is accepted in lieu of photo identification, is credit card sized, made of cardstock, and is not periodically replaced. The card is only replaced if a voter fills out a new voter registration application or calls the state or county election board and submits a request. Voters can also appear in person at any county election board office and receive a temporary voter identification card on the spot that is good for 30 days. Subsequent to the request for a temporary card, the election board will mail the voter a new permanent voter identification card.

Â¶6 Senator Judy McIntyre testified that Oklahoma ranks 44th in the Nation in terms of poverty. According to Senator McIntyre, many people view the Voter ID Act as an extra burden to obtain an ID in order to exercise the right to vote. She pointed to transportation as an issue, noting the cost to pay someone to take a prospective voter to obtain a Driver's license or State ID in person and the inability to do so without money. Although Senator McIntyre acknowledges that voters can obtain a voter ID card in advance without physically going to obtain one, the use of the phrase "photo ID" is misleading. She reasons that after explaining to voters that a voter ID card may be used in lieu of photo ID, some voters remain confused as to what constitutes an acceptable form of identification. That confusion leads to voter suppression and is another way of "keeping out the black vote." Transcript of Procs. 69:3-9, Gentges v. Okla. State Election Bd., CV-2012-284, Aug. 15, 2016.

Â¶7 The evidence further showed that at the polling precinct, voters are asked to show their identification. The precinct official then matches the voter's identification with the name in the Voter Registration log. If their name does not appear or does not match the name on the identification provided, the voter is offered a provisional ballot. For voters using the provisional ballot due to lack of identification, they fill out an affidavit to verify their identity. After being cast, the provisional ballots are kept separate from the regular ballots. At the end of the day, the polling precinct posts a tape on the precinct door with the unofficial vote count of the regular ballots; the bag with provisional ballots is sealed and brought to the election board office. The day after the election, the Secretary for the county election board begins researching each ballot and determining if the ballot should be counted. While keeping the ballot sealed, the Secretary removes the information from the outer envelope and tracks down information to confirm that the voter is in fact registered to vote and to confirm the person's identity. The election results are certified at five o'clock on the Friday evening after the election, at which time the provisional ballots which were counted are included.

Â¶8 In the last gubernatorial election prior to implementation of the Voter ID Act, in November 2010, there were 700 provisional ballots cast statewide. Of those 700, only 117, or 16.71%, were counted.[6] In the November 2012 Presidential election, 1,334,872 people cast a vote in Oklahoma. Of those, 5,172 provisional ballots were cast. Of the 5,172 provisional ballots cast, 1,297 were cast as such due to lack of voter identification. Of the provisional ballots cast due to lack of identification, 211 went uncounted. However, 126 of those ballots were uncounted because of insufficient identification. Also, 53 of the uncounted ballots were due to the voter not being registered and 32 voters presented themselves at the wrong precinct. Finally, in the November 2014 gubernatorial election, 1,607 provisional ballots were cast statewide. Of the provisional ballots cast, 668 were cast provisionally because no identification was provided, and 34 of those were not counted.

Â¶9 At the evidentiary hearing, Appellant argued that the Voter ID Act is a condition on the right to vote and is no less than a poll tax on the people's right to vote. In a journal entry filed October 10, 2016, the Oklahoma County District Court found that Appellant had not met her burden of proof and that based on the evidence presented, the Voter ID Act does not violate the Oklahoma Constitution. The district court further found the Oklahoma venue statute is constitutional. The court therefore entered judgment for the State Election Board on all claims in the case. On October 17, 2016, Appellant filed a petition in error in this matter.

II. STANDARD OF REVIEW

Â¶10 At issue is the constitutionality of Title 26, Section 7-114, the Voter ID Act, and Title 12, Section 133, the venue statute. This Court reviews a statute's constitutional validity de novo. John v. St. Francis Hosp., Inc., 2017 OK 81, Â¶ 8, 405 P.3d 681, 685. This Court assumes "plenary independent and non-deferential authority to reexamine a trial court's legal rulings." Id.

III. ANALYSIS

A. Constitutionality of the Oklahoma Venue Statute

Â¶11 Title 12, Section 133 states:

Actions for the following causes must be brought in the county where the cause, or some part thereof arose:
First. An action for the recovery of a fine, forfeiture or penalty imposed by statute . . .
Second. An action against a public officer for an act done by him in virtue, or under color, of his office, or for neglect of his official duties.
Third. An action on the official bond or undertaking of a public officer.

Okla. Stat. tit. 12, Â§ 133 (2011). Venue for actions against public officers is proper, and is considered to arise, where their office is located. State v. Dist. Ct. of Bryan Cty., 1955 OK 346, Â¶ 8, 290 P.2d 413, 418. However, Appellant contends that this cause arose in Tulsa County, where she is a registered voter and should have her cause heard by a district court judge that she had the ability to vote to approve or disapprove, rather than Oklahoma County where the State Election Board offices are located.

Â¶12 Appellant challenges this Court's interpretation of Section 133 as an unconstitutional special law under Article 5, Section 46 of the Oklahoma Constitution. Section 46 prohibits the passage of local or special laws "[p]roviding for change of venue in civil and criminal cases." Okla. Const., art. 5, Â§ 46. A plain reading of Section 133 shows that Section 133 provides where venue originally lies, not for a change of venue. Section 133 is constitutional under Article 5, Section 46 of the Oklahoma Constitution. Venue for this action is proper in Oklahoma County.

B. Constitutionality of the Oklahoma Voter ID Act

Â¶13 The Oklahoma Constitution provides that elections should be free and equal and that "[n]o power, civil or military, shall ever interfere to prevent the free exercise of the right of suffrage by those entitled to such right." Okla. Const. art. 2, Â§ 4, art. 3, Â§ 5. The Constitution also grants the Legislature power to "prescribe the time and manner of holding and conducting all elections, and enact such laws as may be necessary to detect and punish fraud in such elections." Okla. Const. art. 3, Â§ 4. Laws governing the right to vote must be reasonable and not destructive to a constitutional right. Swindall v. State Election Bd., 1934 OK 259, Â¶ 0, 32 P.2d 691.

Â¶14 From Statehood, this Court has acknowledged that:

[t]he object of election laws is to secure the rights of duly qualified electors, and not to defeat them. Statutory regulations are enacted to secure freedom of choice and to prevent fraud, and not by technical obstructions to make the right of voting insecure and difficult.

State v. Millar, 1908 OK 124, Â¶ 9, 96 P.747, 749 (quoting Hirsh v. Wood, 148 N.Y. 143, 42 N.E. 537). In determining if a law relating to voting was constitutional, we have considered whether the law was designed to protect the purity of the ballot, not as a tool or instrument to impair constitutional rights. Sparks v. State Election Bd., 1964 OK 114, Â¶ 13, 392 P.2d 711, 714. We have also looked at whether a measure reflects a conscious legislative intent for electors to be deprived of their right to vote. Id. Â¶ 11, 392 P.2d at 714.

Â¶15 The Voter ID Act, as passed by the People, states:

A. Each person appearing to vote shall announce that person's name to the judge of the precinct and shall provide proof of identity, whereupon the judge shall determine whether the person's name is in the precinct registry. As used in this section, "proof of identity" shall mean a document that satisfies all of the following:

1. The document shows the name of the person to whom the document was issued, and the name substantially conforms to the name in the precinct registry;

2. The document shows a photograph of the person to whom the document was issued;

3. The document includes an expiration date, which is after the date of the election in which the person is appearing to vote. The provisions of this paragraph shall not apply to an identification card issued to a person sixty-five (65) years of age or older which is valid indefinitely, as provided in Section 6-105.3 of Title 47 of the Oklahoma Statutes; and

4. The document was issued by the United States, the State of Oklahoma or the government of a federally recognized Indian tribe or nation.

Provided, if the person presents a voter identification card issued by the appropriate county election board, such card may serve as proof of identity without meeting the requirements of paragraphs 2 and 3 of this subsection.

B. 1. If a person declines to or is unable to produce proof of identity, the person may sign a statement under oath, in a form approved by the Secretary of the State Election Board, swearing or affirming that the person is the person identified on the precinct registry, and shall be allowed to cast a provisional ballot as provided in Section 7-116.1 of this title.

2. False swearing or affirming under oath shall be punishable as a felony as provided in Section 16-103 of this title, and the penalty shall be distinctly set forth on the face of the statement.

Okla. Stat. tit. 26, Â§ 7-114 (2010).

Â¶16 Where a statute is susceptible of more than one construction, one of which would render it unconstitutional and the other valid and enforceable, the statute should be held constitutional. Swindall, 1934 OK 259, Â¶ 22, 32 P.2d at 695. In cases with various possible interpretations, the object sought to be accomplished thereby is an important factor to be considered in determining the construction to adopt. Id. "The understanding of the Legislature as the framers and of the electorate as the adopters of the constitutional amendment is the best guide for determining an amendment's meaning and scope, and such understanding is reflected in the language used in the measure and the ballot title." Sw. Bell Tel. Co. v. Okla. State Bd. of Equalization, 2009 OK 72, Â¶ 13, 231 P.3d 638, 642.

Â¶17 The ballot title for State Question 746, the Voter ID Act stated:

This measure amends statutes relating to voting requirements. It requires that each person appearing to vote present a document proving their identity. The document must meet the following requirements. It must have the name and photograph of the voter. It must have been issued by the federal, state or tribal government. It must have an expiration date that is after the date of the election. No expiration date would be required on certain identity cards issued to person 65 years of age or older.

In lieu of such a document, voters could present voter identification cards issued by the County Election Board.

A person who cannot or does not present the required identification may sign a sworn statement and cast a provisional ballot. Swearing to a false statement would be a felony.

These proof of identity requirements also apply to in-person absentee voting. If adopted by the people, the measure would become effective July 1, 2011.

State Question 746 (as proposed by Sec'y of State, May 14, 2009) available at https://www.sos.ok.gov/documents/questions/746.pdf.

Â¶18 In application of these rules to the present case, we must consider the situation upon which the act was intended to operate. While there is no evidence of prior in-person voter fraud in Oklahoma, the Voter ID Act was intended as a procedural regulation to prevent future in-person voter fraud by requiring voters to prove they meet the existing qualifications to vote. It was not passed with the intent to impair the right to vote. Neither the Legislature, nor the People of the State of Oklahoma, have to wait for a problem to directly arise before they take action to address it. Munro v. Socialist Workers Party, 479 U.S. 189, 195-96, 107 S.Ct. 533, 537-38 (1986)("Legislatures . . . should be permitted to respond to potential deficiencies in the electoral process with foresight rather than reactively, provided that the response is reasonable and does not significantly impinge on constitutionally protected rights.").

Â¶19 A State's interest in voting is limited to the power to fix qualifications. Harper v. Va. State Bd. of Elections, 383 U.S. 663, 668, 86 S.Ct. 1079, 1082 (1966).

Election laws will invariably impose some burden upon individual voters. Each provision of a code, "whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects--at least to some degree--the individual's right to vote and his right to associate with others for political ends." Anderson v. Celebrezze, 460 U.S. 780, 788, 103 S.Ct. 1564, 1569--70, 75 L.Ed.2d 547 (1983).

Burdick v. Takushi, 504 U.S. 428, 433, 112 S.Ct. 2059, 2063 (1992). The Harper Court noted that "[v]oter qualifications have no relation to wealth nor to paying or not paying [a] tax." Harper, 383 U.S. at 666. Appellant argues that the Voter ID Act makes the affluence of voters an electoral standard by requiring identification and payment of the associated costs found in obtaining identification.

Â¶20 In Crawford v. Marion Cty. Election Bd., 553 U.S. 181, 128 S.Ct. 1610 (2008), the U.S. Supreme Court upheld the constitutionality of a similar Voter ID Law from Indiana. The Indiana Voter ID Law requires voters to present government issued photo identification when voting in-person on election day or in-person in advance of the election day. Id. at 185. Indiana offers free photo identification to qualified voters to establish residence and identity. Id. at 186. In addition, Indiana allows provisional ballots to be cast by indigent voters who have not obtained the free photo identification. Id. In order to vote provisionally, the voter signs an affidavit at the ballot location and then executes another affidavit before the circuit court clerk within ten (10) days of the election. Id. The Indiana district court found that the State had not introduced evidence of a single individual voter who would be unable to vote because of the Voter ID Act. Id. at 187. The U.S. Supreme Court balanced the state's interests with the burdens caused by the Voter ID Act. Id. at 191-203.

Â¶21 Indiana claimed interests in deterring and detecting voter fraud, election modernization, and safeguarding voter confidence. The Court noted that requiring voters to show proof of identity serves to protect the integrity and reliability of the electoral process -- pointing to a federal statute requiring individuals to show identification[7] in order to vote, if they had submitted their application to register to vote for the first time via mail, as an indication that Congress believes that photo identification is an effective method of establishing a voter's qualification to vote. Id. at 192-93, citing Help America Vote Act of 2002 (HAVA), 116 Stat. 1666, 42 U.S.C. Â§ 15483(b) (now 52 U.S.C. Â§ 21083). The Court also noted that while there is no evidence of any in-person voter fraud occurring in Indiana at any time in its history, that there are flagrant examples of such fraud in other parts of the country that have been documented throughout this Nation's history and that those and recent examples of absentee ballot fraud show that voter fraud is real and can affect the outcome of a close election. Id. at 194-95.

Â¶22 The Court stated that the burdens that are relevant are those imposed on people who are eligible to vote but do not possess a current photo identification that complies with the Voter ID Act; determining that a provisional ballot is the remedy for problems caused by "life's vagaries," such as losing identification, not looking like the photo on the identification, or name changes. Crawford, 553 U.S. at 198 ("The fact that most voters already possess . . . some other form of acceptable identification, would not save the statute under our reasoning in Harper, if the State required voters to pay a tax or a fee to obtain a new photo identification."). The Court described the burden to obtain a free photo identification card -- including the inconvenience of making a trip to get the ID, gathering required documents, and posing for a photo -- which they deemed was not a significant increase from the usual burden to vote.

Â¶23 The Court noted that a somewhat heavier burden is placed on people who, because of economic or personal reasons, may find it difficult to secure a copy of their birth certificate or other required documents to obtain the "free" identification card. Id. at 198-99. However, the Court found the severity of the burden to be mitigated by the ability to vote a provisional ballot regardless of the fact that it required a second trip within ten days. Id. at 199. The Court noted that based on the record in the case, which did not show the number of registered voters without photo identification or the difficulties faced by indigent voters, they could not conclude the Voter ID Act imposed excessively burdensome requirements on any class of voters. Id. at 200-02.

Â¶24 Like the Indiana Voter ID Act in Crawford, the Oklahoma Voter ID Act is based on the State's attempt to prevent voter fraud and the lack of evidence of in-person voter fraud in the state is not a barrier to reasonable preventative legislation. Requiring voters to show proof of identity serves to protect the integrity and reliability of the electoral process and prevent in-person voter fraud. Unlike the act in Crawford, Oklahoma does not provide free photo identification cards[8] for voters. However, the Oklahoma Voter ID Act does provide that the free paper voter identification card may be used in lieu of an approved photo identification. Further, a voter with no identification can vote by provisional ballot at the polling location with no further trips required. Because the Oklahoma Voter ID Act exists as a procedural regulation to ensure voters meet an existing qualification of voting and there is no direct cost associated with voting, it is constitutional.

IV. CONCLUSION

Â¶25 The Oklahoma venue statute providing that venue for this case is in Oklahoma County, where the Oklahoma Election Board is located, is not a special law. The Oklahoma Voter ID Act is a reasonable procedural regulation to ensure that voters meet identity and residency qualifications to vote and does not cause an undue burden. Both statutes are therefore constitutional.

ORDER OF THE DISTRICT COURT IS AFFIRMED.

CONCUR: Combs, C.J., Gurich, V.C.J., Kauger, Winchester, Edmondson, Reif and Darby, JJ.

CONCUR IN RESULT: Colbert, J.

RECUSED: Wyrick, J.

FOOTNOTES

[1] Appellee states that the act should be known as the "Proof of Identity Statute," but for simplicity referred to it as the Voter ID Act throughout their filings. As the act did not contain an official title, we refer to it by its most common name, the "Voter ID Act."

[2] Title 26, Section 7-114 states:
A. Each person appearing to vote shall announce that person's name to the judge of the precinct and shall provide proof of identity, whereupon the judge shall determine whether the person's name is in the precinct registry. As used in this section, "proof of identity" shall mean a document that satisfies all of the following
1. The document shows the name of the person to whom the document was issued, and the name substantially conforms to the name in the precinct registry;
2. The document shows a photograph of the person to whom the document was issued;
3. The document includes an expiration date, which is after the date of the election in which the person is appearing to vote. The provisions of this paragraph shall not apply to an identification card issued to a person sixty-five (65) years of age or older which is valid indefinitely, as provided in Section 6-105.3 of Title 47 of the Oklahoma Statutes; and
4. The document was issued by the United States, the State of Oklahoma or the government of a federally recognized Indian tribe or nation.
Provided, if the person presents a voter identification card issued by the appropriate county election board, such card may serve as proof of identity without meeting the requirements of paragraphs 2 and 3 of this subsection.
B. 1. If a person declines to or is unable to produce proof of identity, the person may sign a statement under oath, in a form approved by the Secretary of the State Election Board, swearing or affirming that the person is the person identified on the precinct registry, and shall be allowed to cast a provisional ballot as provided in Section 7-116.1 of this title.
2. False swearing or affirming under oath shall be punishable as a felony as provided in Section 16-103 of this title, and the penalty shall be distinctly set forth on the face of the statement.

Okla. Stat. tit. 26, Â§ 7-114 (2010).

[3] Title 26, Section 7-114 has since been amended to also allow identification cards issued by the armed services of the United States to an active or retired member without having an expiration date. Okla. Stat. tit. 26, Â§ 7-114(A)(3) (2014).

[4] Title 26, Section 7-114 has also been amended to clarify the requirements of what the provisional ballot must correctly contain and have verified in order to be counted. Okla. Stat. tit. 26, Â§ 7-114(B) (2014).

[5] In January 2012, this Court issued a writ prohibiting the Tulsa County District Court from entertaining a constitutional challenge to the Voter ID Law and stating that the action must be brought in the County of the Defendant's official residence. Okla. State Election Bd. v. Hon. Jefferson Sellers, 109,981, CV-2010-648. Appellant moved the case to Oklahoma County. The Oklahoma County District Court granted summary judgment stating that the bill was validly enacted and Appellant lacked standing; Appellant appealed to this Court. In Gentges I, we determined that the bill was validly enacted, that Appellant has standing to challenge the Voter ID Act, and remanded for the district court to determine the constitutionality of the Voter ID Act and of the state venue provision. Gentges v. Okla. State Election Bd. (Gentges I), 2014 OK 8, 319 P.3d 674.

[6] Prior to the Oklahoma Voter ID Act, there was an identification component for first-time voters who registered by mail based on the federal Help America Vote Act (HAVA). Help America Vote Act of 2002, 116 Stat. 1666, 42 U.S.C. Â§ 15483(b) (now 52 U.S.C. Â§ 21083(b)(2)(A)). However, under HAVA voters could provide photo identification or present a copy of a current utility bill, bank statement, government check, paycheck, or other government document that showed the name and address of the voter to verify their identity. As such, two of the provisional ballots that were counted in 2010 were cast provisionally due to the lack of identification. Both ballots cast due to lack of identification were counted in that election.

[7] HAVA requires voters to present written identification and permits either a valid government issued identification card or other forms of documentation such as a current utility bill, bank statement, paycheck, or other government document that shows the name and address of the voter. Crawford, 553 U.S. at 193, 52 U.S.C. Â§ 21083(b)(2).

[8] Oklahoma does provide an exception from payment for identification cards at age 65, Okla. Stat. tit. 47, Â§ 6-101(O) (2017), and for former U.S. armed forces with an honorable discharge with 100% permanent disability though military action or disease contracted during time in the military. Okla. Stat. tit. 47, Â§ 6-101(P) (2017). Under those exceptions, the person is still responsible for the costs associated with the underlying required identification or birth certificates and the cost and inconvenience of making the trip to obtain the free photo identification card, similar to Crawford.

Â