OSCN Found Document:WHITE AND WADDELL v. STITT

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 WHITE AND WADDELL v. STITT
2025 OK 68
Case Number: 123222
Decided: 10/07/2025
As Corrected: October 8, 2025
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2025 OK 68, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

JOE E. WHITE, JR. and JASON WADDELL,
Petitioners,
vs.
KEVIN STITT,
Governor of Oklahoma; et al.
Respondents.

APPLICATION TO ASSUME ORIGINAL JURISDICTION

¶0 Petitioners challenge the constitutionality of Senate Bill 632, an act relating to business courts. On July 15, 2025, the Court assumed original jurisdiction to issue a stay of the effectiveness of the Act pending further order of this Court. We deny the Governor's Motion to Dismiss. We find that Petitioners possess standing. We hold S.B. 632 is an unconstitutional violation of Article VII, Section 9 of the Oklahoma Constitution. Because we conclude the unconstitutional provisions of the Act are not severable, the Act is void in its entirety, and we need not adjudicate Petitioners' additional claims challenging the Act.

MOTION TO DISMISS DENIED; ORIGINAL JURISDICTION ASSUMED; PETITION FOR DECLARATORY RELIEF GRANTED

Bob Burke, Jason Waddell, and Joe E. White Jr. for Petitioners Jason Waddell and Joe E. White Jr.

Gary M. Gaskins, II and Sam Black, Office of Attorney General, for Respondents Lonnie Paxton and Kyle Hilbert.

Benjamin M. Lepak, Audrey A. Weaver, Remington D. Dean and William T. Milam, III for Respondent J. Kevin Stitt.

Wyatt A. McGuire and Spencer Habluetzel for Amicus Curiae Oklahoma Association for Justice.

GURICH, J.

¶1 Senate Bill 632 (S.B. 632 or the Act) aims to create and establish a framework for "business court division[s] within the district court of any judicial district containing a county with a population in excess of five hundred thousand...." S.B. 632, 2025 Okla. Sess. Law 316. Oklahoma is divided into twenty-six judicial districts. 20 O.S. § 92.1

providing for salary of [a] judge of business court;... authorizing appointment of law clerk by business court judges;... providing for appointment of business court judges by Governor; requiring Senate confirmation; requiring Speaker of the House of Representatives to provide certain lists; establishing qualifications for appointment of business court judges; specifying terms; authorizing reappointment; ... [and] specifying method of filling vacancies.

Id.

¶2 On June 26, 2025, Petitioners filed an Application to Assume Original Jurisdiction, Petition for Declaratory Relief, and Request for Extraordinary Relief, including a Motion to Stay. Petitioners raise several constitutional issues with S.B. 632 and request that it be declared unconstitutional. Petitioners also ask the Court to permanently enjoin the enforcement of any provision of S.B. 632.

¶3 On July 7, 2025, the Honorable Lonnie Paxton, Senate President Pro Tempore, and the Honorable Kyle Hilbert, Speaker of the House, moved for their dismissal from the case. Paxton and Hilbert argued they possessed legislative immunity pursuant to the protections of the Speech or Debate Clause of the Oklahoma Constitution, Article V, Section 22. 

¶4 On July 8, 2025, Respondent, the Honorable J. Kevin Stitt, Governor of the State of Oklahoma, opposed Petitioners' Application to Assume Original Jurisdiction. Then, following the Court's dismissal of Paxton and Hilbert, the Governor filed his own Motion to Dismiss on July 10, 2025, asserting that he, the only remaining respondent, is also not a proper party and the case should therefore be dismissed in its entirety.

¶5 The Oklahoma Association for Justice filed an Amicus Curiae Statement in Support of Petitioners on July 10, 2025. The Governor responded on July 14, 2025.

¶6 On July 15, 2025, the Court heard oral arguments from Petitioners and the Governor. That same day the Court assumed original jurisdiction to issue a temporary stay of the effectiveness of S.B. 632 pending further order or opinion from the Court.

I. The Governor's Motion to Dismiss

¶7 The Governor argues that he is not a proper party to this dispute and that the entire action should therefore be dismissed for the lack of a proper respondent. The Governor asserts that Petitioners' statement that "it is not necessary for individual legislators to be Respondents in this action" necessitates his own dismissal because his role is even more attenuated than the legislators' roles: he selects an appointee from the list provided to him by the House, he provides that appointee to the Senate for confirmation, and he plays no role in managing business court operations, enforcing their decisions, or funding their function. With respect to his selection of appointees for the business courts, the Governor suggests that this role is "inherently discretionary" and thus requires a showing of gross abuse of discretion to warrant injunctive relief.

¶8 The Governor's Motion to Dismiss also asserts that he cannot be deemed a proper party via any legislative role he played or his general executive power. In support of these arguments, the Governor relies heavily on a federal, Eleventh Circuit case, Women's Emergency Network v. Bush, 323 F.3d 937 (11th Cir. 2003). Notably, this case did not suggest that a governor can never be a proper party in a suit challenging the constitutionality of legislation. Instead, the Eleventh Circuit Court of Appeals cited its prior rulings that suits against state officers, such as a governor, are permitted "when those officers are 'responsible for' a challenged action and have 'some connection' to the unconstitutional act at issue." Id. at 949.

¶9 Petitioners argue that the Governor is a proper party due to his non-discretionary responsibility to appoint business court judges that are not elected--one of the many aspects of S.B. 632 that Petitioners allege is unconstitutional. Further, Petitioners assert that the Governor is an indispensable party because they specifically seek to enjoin him from appointing business court judges.

¶10 Although not dispositive of whether the Governor is a proper party, it is worth noting that the Governor's Motion to Dismiss downplays the reality of his involvement with S.B. 632. At oral argument on July 15, 2025, the Governor's counsel indicated he personally authored the Act. The Governor therefore played an active role in drafting S.B. 632 and continues to advocate on its behalf. Further, it is not uncommon for Governors of the State of Oklahoma to be named in constitutional challenges to legislation. See e.g., Hunsucker v. Fallin, 2017 OK 100408 P.3d 599Fent v. Fallin, 2014 OK 105345 P.3d 1113Coats v. Fallin, 2013 OK 108316 P.3d 924Fent v. Fallin, 2013 OK 107315 P.3d 1023 

¶11 Here, S.B. 632 obligates the Governor to appoint business court judges via an appointment process that is at the heart of this dispute. While the Governor has some discretion in which of three candidates he appoints, he must select an appointee. Petitioners are not challenging the Governor's choice of appointees; they are challenging the appointment process as a whole. We find the Governor's connection to this challenged aspect of the Act sufficient, especially in light of Petitioners' requested injunctive relief, to permit this action against the Governor. As such, the Governor's Motion to Dismiss is denied.

II. Standing

¶12 Standing is a preliminary issue that must be adjudicated prior to an examination of the merits. "Standing refers to a person's legal right to seek relief in a judicial forum." Fent v. Contingency Review Bd., 2007 OK 27163 P.3d 512Id. Petitioners' assert that they have standing as resident taxpayers and registered voters in Oklahoma County. 

¶13 With respect to their taxpayer standing, 

¶14 It is not speculative that public funds will be spent implementing S.B. 632. The Act itself contemplates several expenditures. And, at oral argument, the Governor's counsel indicated that implementation of S.B. 632 is estimated to cost $2 million dollars and that the Legislature has already appropriated $2 million dollars to fund it. Taxpayers have a legal right to the lawful appropriation and expenditure of public funds. See id. ¶ 8, n. 23, 163 P.3d at 520 (collecting cases concerning the right of a taxpayer to challenge illegal expenditure of public funds). As we held in Thomas v. Henry, 2011 OK 53260 P.3d 1251

¶15 With respect to Petitioner Waddell's voter standing, 

¶16 This Court has previously held that registered voters are often the "most logical" parties to contest legislation which imposes conditions or otherwise inhibits the right to vote. Gentges v. Okla. State Election Bd., 2014 OK 8319 P.3d 674Gentges, the Court found that a registered voter, Ms. Gentges, had individual standing to challenge the constitutionality of a new state law requiring identification to be presented at polling places prior to voting, even if her injury was shared by other voters. Id. ¶ 12, 319 P.3d at 677.

Gentges's vindication of her right to vote necessarily worked to vindicate the rights of all others in the class of voters affected by the law, but that wasn't to say that Gentges would have standing even if she wasn't a member of the class regulated by the law. It was merely a recognition of the broad reach of the voter-identification law, and the far-reaching impact of a judgment in Gentges's favor.

Hunsucker v. Fallin, 2017 OK 100408 P.3d 599as modified (Dec. 20, 2017) (Wyrick, J. concurring in part and dissenting in part).

¶17 Here, Petitioner Waddell, as a registered voter, has a basic constitutional right to elect district judges in his respective district or county. OKLA. CONST. art. VII, § 9. To the extent S.B. 632 may strip Petitioner Waddell of this right for the business court judge that will preside within Oklahoma County, we find this injury to be imminent, caused by the Act, and capable of being redressed by a favorable decision of this Court. Although similar injuries may be shared by voters statewide, 

III. Assumption of Original Jurisdiction

¶18 Petitioners request the Court assume original jurisdiction and grant extraordinary and declaratory relief. Petitioners cite this Court's original jurisdiction which extends "to a general superintending control over all inferior courts and all Agencies, Commissions and Boards created by law." OKLA. CONST. art. VII, § 4. Petitioners assert that the issues presented are publici juris because "the jurisdiction of the business court created by [S.B. 632] affects all 77 counties of the state, mandating a long list of legal actions involving thousands of civil cases that could be either filed or removed to the business court." 

¶19 "Whether the Court exercises supervisory or superintending original jurisdiction is a discretionary decision based upon the Court's assessment of several factors, and the Court must determine whether original jurisdiction is appropriate...." Indep. Sch. Dist. No. 12 of Okla. Cnty. v. State ex rel. State Bd. of Educ., 2024 OK 39565 P.3d 23publici juris, i.e. "a matter affecting the community at large, when combined with a pressing need for a judicial determination based upon the circumstances." Id. ¶ 22, 565 P.3d at 32. Although "it is the rare case that will be entertained on original jurisdiction that requests declaratory relief," Edmondson v. Pearce, 2004 OK 2391 P.3d 605

IV. Constitutionality of S.B. 632

¶20 Petitioners contend S.B. 632 violates Article VII, Section 9 of the Oklahoma Constitution by circumventing the election of business court judges. The Governor contends that the business court judge appointment and reappointment processes do not violate Article VII, Section 9 because he insists business court judges are not district judges.

¶21 We find the Governor's arguments internally inconsistent. On one hand, he asserts that business court judges are not district court judges

¶22 If S.B. 632 was truly aiming to create a new court separate from the district courts, it has exceeded the boundaries of the Oklahoma Constitution. Absent a constitutional amendment, judicial power is vested only in the following eight courts: "Supreme Court, the Court of Criminal Appeals, the Court on the Judiciary, the State Industrial Court, the Court of Bank Review, the Court of Tax Review," "such intermediate appellate courts as may be provided by statute", and "District Courts." OKLA. CONST. art. VII, § 1. A business court is not one of the existing, enumerated courts with judicial power. And the Legislature cannot create or vest judicial power in a new court.

¶22 The Governor argues that Article VII, Section 1 of the Oklahoma Constitution "authorizes the Legislature to establish by statute entities or courts exercising adjudicative or judicial authority." 

¶23 The Oklahoma Constitution separates the power of the government into three separate departments: Article 5 delineates the powers of the Legislature; Article 6 enumerates the power of the Executive branch; and Article 7 governs the Judiciary. "[E]xcept as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others." OKLA. CONST. art. IV, § 1. At one time the Oklahoma Constitution gave to the Legislature the express power to create courts: "The judicial power of this State shall be vested in ... such other courts, ... as may be established by law." OKLA. CONST. art. VII, § 1 (amended 1967). But, as part of the court reform enacted in 1967, this language was removed, and the Legislature's power was intentionally limited. Jackson v. Freeman, 1995 OK 100905 P.2d 217see also Jackson, 1995 OK 100

¶24 Although a new court may have been the desired intent of S.B. 632, the only accurate reading of S.B. 632 is that it instead creates business court divisions within Oklahoma County and Tulsa County District Courts. This interpretation is consistent with the plain language of the Act itself. The first section of the Act states that it creates "business court division[s] within the district court." 

¶25 This interpretation is also consistent with the pre-existing framework for business courts which was statutorily established in 2004 and 2024 and not revised by S.B. 632. In 2004, the Legislature established a business court docket for business court divisions of the district courts. See 20 O.S. 91.2(A). See 20 O.S. § 92.8f20 O.S. § 92.1

¶26 As such, the logical conclusion is that a "business court division" is simply that--a division

¶27 S.B. 632 mandates a selection process that does not involve the election of business court judges. Instead, "[t]he Governor shall choose an appointee for any vacancy from a list of three candidates provided by the Speaker of the House of Representatives." S.B. 632, 2025 Okla. Sess. Law 316, Section 5. That appointee is then presented before the Senate for their consent. Id. After this appointment process is complete, the "business court judge shall serve a term of eight (8) years... and may be reappointed." Id. "A business court judge shall serve the full term to which he or she was appointed and shall continue to serve until a replacement is appointed and assumes office." Id. "If a vacancy occurs in the office of a business court judge due to death, incapacity, resignation, or impeachment, the Governor shall appoint a person to serve for the remainder of the unexpired term in the same manner as the original appointment." Id.

¶28 We therefore find S.B. 632 unconstitutional in that it violates Article VII, Section 9 of the Oklahoma Constitution.

V. Severability of S.B. 632

¶29 Although the Act does not contain a severability clause, 75 O.S. § 11a

¶30 Petitioners

¶31 But we do not have to parse through the Act hunting for constitutionally sound provisions to know that it is incapable of being enforced to its drafters' intent. At oral argument on July 15, 2025, the Governor's counsel, who personally authored the Act, was clear that business court judges were not intended to be district court judges or subject to the same appointment and election process as district court judges. Instead, the intent was to create stand-alone judges that are appointed by the Governor to a freestanding court created by the Act. The remainder of the Act simply "details the framework for their operations." 

¶32 As described above, we cannot honor this legislative intent within the parameters of our Constitution. With the core foundation of the Act being deemed unconstitutional, the remainder of the Act is deprived of its intended context. Upon examination, we conclude the remaining valid provisions of S.B. 632, standing alone, are incomplete and do not honor the intent of the Act.

VI. Conclusion

¶33 The Court concludes Petitioners have standing. Several aspects of Senate Bill 632 violate the Oklahoma Constitution, and non-offending sections are not capable of being severed and executed in accordance with the legislative intent. We therefore conclude Senate Bill 632 is unconstitutional, void in its entirety, and lacking legal enforceability.

¶34 Should the parties choose to file a petition for rehearing, it must be done within ten days of the day this opinion is filed. Five additional days will be allowed for a response. This time limitation will not be extended.

¶35 The Court previously issued an order temporarily staying the effectiveness of Senate Bill 632 until a future order or opinion of this Court. This opinion is an exercise of original jurisdiction and is immediately effective upon its filing with the Clerk of this Court. No post-opinion mandate will be issued by this Court. The temporary stay remains in effect until the rehearing period expires or rehearing is resolved.

CONCUR: WINCHESTER, EDMONDSON, COMBS, GURICH, AND DARBY, JJ.

CONCUR IN PART, DISSENT IN PART: ROWE, C.J., (by separate writing)

DISSENT: KUEHN, V.C.J., (by separate writing), JETT, J., (by separate writing)

NOT VOTING: KANE, J.

FOOTNOTES

e.g. restricted access to courts--are of sufficient public importance to warrant public interest standing. The Governor asks that the Court reevaluate and limit its public interest standing jurisprudence. We need not analyze Petitioners' individual standing as attorneys or the public interest standing doctrine because we find Petitioners possess alternative standing in this matter.

Amicus Curiae Statement in Support of Petitioners at 3. Petitioner Waddell represented the same at oral argument. The Governor did not contest Petitioners' taxpayer status in Response to the Amicus Statement or at oral argument.

See 5 O.S. Ch. 1, App. 1, Rules Creating and Controlling the Okla. Bar Ass'n, art. I § 2; 5 O.S. Ch. 1, App. 3-A, Rules of Prof. Conduct, Rule 3.3. As such, we deem his representation that he is both a taxpayer and registered voter in Oklahoma County as sufficient evidence of the same. Under these specific circumstances, we believe that requiring Waddell to submit an affidavit or to bring this case to the district court to build such a record would be superfluous and a waste of judicial resources.

Id. at 10.

id. at 8, 10, and then he later indicates S.B. 632 "did not create business courts" because he believes Senate Bill 473 (S.B. 473) already "created two business courts." The Governor's Response to Amicus Curiae Statement in Support of Petitioners ("Governor's Response to Amicus") at 2.

S.B. 473 did not, as the Governor suggests, "create[] two business courts." S.B. 473, 2024 Okla. Sess. Law 370. For more analysis of S.B. 473, see ¶ 25.

Id. ¶ 16, 905 P.2d at 221.

At the time Article VII, Section 1 was adopted in 1967, judicial power was vested in the State Industrial Court as a specialized court to handle the state's workers' compensation claims. In 1977, the Legislature changed the State Industrial Court into the Workers' Compensation Court. Then, in 2013, the court was changed again into the Workers' Compensation Court of Existing Claims ("Court of Existing Claims"). Neither the Workers' Compensation Court nor the Court of Existing Claims were newly created courts. Instead, they were modifications of the original State Industrial Court. The Legislature had the authority to make each of these changes under their Article VII, Section 1 power to change the State Industrial Court: "the State Industrial Court... shall continue in effect, subject to the power of the Legislature to change or abolish said Court[]...." The judicial function of the Court of Existing Claims continues to exist to this date. 85A O.S. § 400

On the other hand, the Worker's Compensation Commission is "an executive agency of the State of Oklahoma," 85A O.S. § 19

20 O.S. § 91.2

20 O.S. § 92.8f

20 O.S. § 92.1

A "division" of a district court is an administrative subsection of the district court that specializes in a certain type of case. See Jernigan v. Jernigan, 2006 OK 22138 P.3d 539

Divisions of the district courts have been a part of our judiciary for decades. While 20 O.S. § 91.7See OKLA. CONST. art. VII, § 10 ("Subject to the authority of the Supreme Court, the Presiding Judge shall have general administrative authority over the Judicial Administrative District, including authority to provide for divisions, general or specialized....").

75 O.S. § 11a

e.g., its power to create 'divisions, general or special'" under Article VII, Section 7; (2) depriving "District Courts of their constitutionally defined jurisdiction in all justiciable matters by creating an inferior court with 'concurrent jurisdiction' and tasking the same with all the judicial functions of District Courts, at least with respect to actions over which the business court has the statutorily defined 'jurisdiction' provided by the Legislature"; (3) interfering with this Court's administrative authority over all courts in the state; and (4) interfering with the Presiding Judge's general administrative authority over any given Judicial Administrative District. The OAJ also argues that S.B. 632 is an impermissible special law in its definition of subject matter jurisdiction and its treatment of individuals versus businesses.

Id. at 9.

ROWE, C.J., CONCURING IN PART, DISSENTING IN PART:

¶1 While I agree that the Legislature cannot create or vest judicial power in a court not enumerated in Article 7, § 1 of the Oklahoma Constitution, the Legislature can create a new division within an enumerated court and has done so in the past. 20 O.S. § 91.7

¶2 Because the business court is a division within the district court, the business court judges must either be district judges or associate district judges. 

¶3 The selection of district judges and associate district judges through a non-partisan election reflects a deliberate constitutional design grounded in the principle of judicial independence. Judges that are originally appointed by the Governor are then constitutionally required to stand for election. This election process ensures that judges are accountable to the people rather than to the political branches of government, thereby preserving the integrity and impartiality of the Judiciary. The implementation of a business court division must adhere to the constitutional framework governing judicial selection. Because business court judges are either district judges or associate district judges, they "shall be elected by the voters of the several respective districts or counties at a non-partisan election. . . ." Okla. Const. art. 7, § 9. S.B. 632's failure to comply with Article 7 § 9 of the Oklahoma Constitution renders it unconstitutional.

¶4 As the Majority notes, the Legislature has previously acted within constitutional bounds to address business-related litigation. Majority ¶ 25. In 2004, the Legislature created a business court docket within the district court, 

¶5 Lastly, I agree with the majority that this case presents an appropriate occasion to assume original jurisdiction under publici juris. Majority ¶ 19. Article 7 § 4 of the Oklahoma Constitution states that "[t]he original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all Agencies, Commissions and Boards created by law. . . ." Okla. Const. art. 7, § 4. When a matter involves a controversy over which both this Court and the district courts have concurrent jurisdiction, Article 7 § 4 of the Oklahoma Constitution confers discretionary power with this Court to assume original jurisdiction. Edmondson v. Pearce, 2004 OK 2391 P.3d 605Id. ¶ 11.

¶6 Our jurisprudence makes clear that a matter of public interest is one that affects the people or community at large. Id. Here, the Petitioners are requesting a declaration that S.B. 632 is unconstitutional. Whether S.B. 632 is constitutional unquestionably affects the public at large. For starters, as explained above, the judicial selection process set forth in S.B. 632 circumvents the requirements set forth in Article 7, § 9 of the Oklahoma Constitution and interferes with Oklahomans' right to vote. The question of constitutionality which would affect Oklahomans' right to vote is publici juris in nature.

¶7 The urgency of this matter further supports our decision to assume original jurisdiction. S.B. 632 was to set to go into effect September 1, 2025. According to the bill, the two business court judges were to begin their term September 1, 2025, and begin hearing cases January 1, 2026. To allow the challenges raised herein to percolate through the court system would--over several months or even years--undoubtedly result in two individuals resigning from their current professional positions to assume judicial roles that would ultimately be declared unconstitutional. In addition, any business court decisions rendered during this time would likely be challenged for legitimacy pending a final decision by this Court, undermining the very principle of judicial economy and efficiency that the business courts aim to promote.

¶8 Nonetheless, I agree with Justice Jett's dissent that not every matter of concurrent jurisdiction warrants our immediate review. I previously dissented to this Court's order entered in Rev. Dr. Mitch Randall, et al. v. Ryan Walters, et al., Supreme Court Case No. 123,237, wherein the Court assumed original jurisdiction to issue a temporary stay on the implementation of the 2025 Oklahoma Academic Standards for Social Studies. I dissented because the case presented fact-intensive questions that were better suited for initial development in the district court and any urgency had dissipated with the 2025 Social Studies Standards already in effect.

¶9 Here, by contrast, both publici juris factors are present and the central issue is a question of law: whether S.B. 632 violates the Oklahoma Constitution. Whether a duly enacted statute is consistent with clear constitutional provisions is an inquiry that falls squarely within this Court's role, making this case precisely the type of matter for which our constitutional superintending authority was designed.

FOOTNOTES

See 20 O.S. § 123See Okla. Const. art. 7, § 8(h).

KUEHN, V.C.J., Dissenting:

¶1 Petitioners ask this Court to rule in their favor on two key procedural hurdles: original jurisdiction and standing. I would find that they fail to meet the jurisdictional requirements for this Court. I dissent to the Majority's conclusion that Petitioners have standing, the premature analysis of SB 632, and the conclusion that SB 632 is unconstitutional.

This Court should not exercise original jurisdiction

¶2 Before reaching the question of standing of the parties, the Court must first determine whether to exercise original jurisdiction. This case arrives not after the development of a factual record--no discovery, pleadings, motion practice, or evidentiary hearings--but solely based on an attached piece of legislation. It comes to us not through the careful development of a legal record, but as an emotionally driven request unsupported by factual context.

¶3 This Court was intended "primarily as an appellate court," as established in Jarman v. Mason, 1924 OK 722229 P. 459See Indep. Sch. Dist. No. 12 of Okla. Cnty. v. State ex re. State Bd. of Educ., 2024 OK 39565 P.3d 23

¶4 In 2004, the Legislature identified a need for a court to consider "highly technical commercial issues" in Oklahoma's most populated counties and authorized this Court to create "a business court division." See 20 O.S. 2004, § 91.7

¶5 When the Court assumes original jurisdiction under the publici juris doctrine, it must find that two elements are present: (1) the matter must be affected with the public interest, and (2) there must be an "urgency or pressing need for an early determination of the matter." Keating v. Johnson, 1996 OK 61918 P.2d 51

¶6 Regarding the first requirement, the Majority finds the issues important. Constitutional questions will always be significant and will ultimately reach this Court. But legal significance alone does not establish urgency or pressing need. The record contains no evidence of urgency: no massive taxpayer waste, unfilled offices, or threats to public health or safety. All parties agree that this Court--or the district court--could issue a stay on the upcoming deadline to appoint district judges to the newly-funded court. 

¶7 By statute, the Business Court could not begin accepting cases until January 2026. That is ample time for Petitioners to seek relief in the district court, develop a record, and litigate the constitutionality of the new law, including issues of standing. And with a stay in place, there are no newly appointed judges, and therefore, no Business Court dockets.

¶8 Petitioners claim, without a record, that the distribution of taxpayer funds creates urgency. Even without a lower court record, this is incorrect. The referenced funds can be, and are currently being, used for necessary infrastructure such as coding, MIS systems, court space, and procedural setup for Business Court dockets. The use of appropriated funds to implement a Business Court program is not an exigent threat warranting emergency intervention. In fact, the expenditures are being used to implement a policy authorized and requested by the Legislature over 21 years ago.

¶9 While the Court may possess expertise regarding judicial operations and constitutional interpretation, procedural requirements cannot be circumvented or records constructed to expedite the resolution of institutional problems. Available alternative approaches include legislative review and constitutional amendment, or district court proceedings in which Petitioners can develop an adequate evidentiary foundation before asking this Court to render such consequential decisions. This Court, as mandated since 2004, can continue developing business litigation dockets in the district courts of Tulsa and Oklahoma Counties to implement the Legislature's policy determination. The best practice is to remain still, trust the process, and establish a proper record.

¶10 The policy decision--first enacted in 2004 and reaffirmed today--is clear: the people of Oklahoma want a specialized division of the district court to efficiently manage complex business litigation. The Legislature has funded that policy. While litigation over the constitutionality of judicial selection along with arguments about specialized law and due process violations are pending, there is no dispute that the Legislature may constitutionally create judgeships or divisions within the existing district courts and fund them.

¶11 The use of appropriated funds to implement a program is not an exigent threat warranting emergency intervention. Nor is there any evidence in the record to support a claim of irreparable harm. The mere fact that lawyers and judges understand the issue and feel compelled to act does not justify abandoning established procedures or proceeding without a record or sufficient time.

¶12 I would deny original jurisdiction and remand with a stay until the district court determines whether to maintain injunctive relief.

There is no record establishing Petitioners' standing to sue

¶13 With a complete record, the Court might hold the Petitioners have standing. However, without a record, the Majority recognizes as facts statements and arguments raised for the first time at oral argument to create standing. Standing requirements exist to ensure that a party has suffered actual personal harm and maintains a personal stake in the result. Hunsucker v. Fallin, 2017 OK 100408 P.3d 599

¶14 To remedy this deficiency, the Majority relies solely on statements made by the attorneys during oral argument. First, the attorneys suggested Petitioners had standing as taxpayers concerned about the expenditure of public funds. This was neither raised nor briefed in the pleadings and, given the lack of record, unsupported by evidence.

¶15 Second, during the oral argument Petitioner Waddell claimed standing based on his status as a registered voter of Oklahoma County. Citing Gentges v. Oklahoma State Election Board, 2014 OK 8319 P.3d 674 contest legislation that infringes on a constitutional right. However, Gentges began in district court, where summary judgment and dismissal motions were briefed and argued, and evidence was actually presented on the issue of standing. Not so in this case. The issue of standing based on voter registration was also unbriefed and unsupported by evidence. I do not suggest I doubt Petitioner Waddell's statement, but its truth is not the point. This Court cannot and should not base a finding of standing on comments or arguments raised for the first time in oral argument and unsupported by a record.

¶16 I would find Petitioners have not established standing, and there is no public urgency to justify assuming original jurisdiction. I dissent.

FOOTNOTES

JETT, J., dissenting:

¶1 I dissent from the assumption of original jurisdiction in this case. The propriety of exercising original jurisdiction should be independently assessed without regard to the merits of a dispute, and we should follow the test we have prescribed for assuming concurrent original jurisdiction.

¶2 This case does not pass the test. I would deny the application to assume original jurisdiction so the parties may seek relief in the district court.

I.

¶3 On May 29, 2025, the Legislature enacted Senate Bill 632, which seeks to implement business courts in Oklahoma. Okla. Sess. Laws Ch. 316 (2025). The act was set to become effective on September 1, 2025, but the business courts would not begin accepting cases until January 1, 2026. Id. §§ 6, 10.

¶4 Petitioners filed this proceeding in the Supreme Court on June 26, 2025. Petitioners requested that we afford interim relief by either temporarily enjoining the Governor from appointing business court judges or stay the effectiveness of SB 632. Petitioners' ultimate request is that we enter declaratory judgment holding SB 632 unconstitutional.

¶5 On July 15, 2025, we held oral argument. Later that day, the Court assumed original jurisdiction and stayed the effectiveness of SB 632. I dissented from that order. I do not believe this is an appropriate case for this Court to exercise concurrent original jurisdiction.

II.

¶6 The Supreme Court's original jurisdiction, when concurrent with the district court's jurisdiction, has long been recognized as a "stand-by service." Jarman v. Mason, 1924 OK 722229 P. 459Kitchens v. McGowen, 1972 OK 140503 P.2d 218Keating v. Johnson, 1996 OK 61918 P.2d 51Keating, 1996 OK 61918 P.2d 51 Kitchens, 1972 OK 140

¶7 Our judiciousness in assuming concurrent original jurisdiction is not merely a prudential limitation. It flows from the text of the Oklahoma Constitution. Pursuant to Article VII, Section 7, "[t]he District Court shall have unlimited original jurisdiction of all justiciable matters, except as otherwise provided in this Article . . . ." The Supreme Court's original jurisdiction "shall extend to a general superintending control over all inferior courts and all Agencies, Commissions and Boards created by law." Okla. Const. art. VII, § 4. "This court must not be led too far astray from its appellate work, as this court was by the framers of the Constitution intended primarily as an appellate court." Kitchens, 1972 OK 140 Jarman, 1924 OK 722

¶8 When the Supreme Court's jurisdiction is concurrent with the district court, we purport to exercise original jurisdiction when (1) the case concerns the public interest and (2) there is some urgency or pressing need for an early decision. Edmondson v. Pearce, 2004 OK 2391 P.3d 605Keating test); Fent v. Contingency Review Bd., 2007 OK 27163 P.3d 512rare case that will be entertained on original jurisdiction that requests declaratory relief." Edmondson, 2004 OK 23Keating, 1996 OK 61 Jarman, 1924 OK 722

II.

¶9 In this case, Petitioners cannot show a pressing need for an expedited, final decision from this Court. The alleged harm by Petitioners--the appointment of business court judges and expenditure of state funds--is entirely forestalled with interim injunctive relief (i.e. enjoining Respondent from enforcing SB 632). The Supreme Court does not have a monopoly on granting injunctions. When interim relief can preserve the status quo and prevent the harm alleged by a petitioner, there is no urgent need for this Court to assume original jurisdiction. We exercise concurrent original jurisdiction "only when . . . great injury will be done by . . . [the Court's] refusal so to do." Keating, 1996 OK 61

¶10 To be sure, there are certain cases when the alleged harm cannot be alleviated with interim relief. For instance, in certain inter-branch disputes the harm stems from government gridlock. E.g. Ethics Comm'n v. Cullison, 1993 OK 37850 P.2d 1069

¶11 Similarly, in Naifeh v. Oklahoma Tax Commission, the Court accepted original jurisdiction to assess the constitutionality of a tax levy masquerading as a fee. 2017 OK 63Id. ¶ 15, 400 P.3d at 765. The severity of the potential budget shortfall and scope of potential cuts grew with each day. Staying the enforcement of the tax in Naifeh could not preserve the status quo because that revenue was necessary to fund state functions. Thus, the Court appropriately granted original jurisdiction to facilitate an expediated, final resolution.

¶12 This case is different than Naifeh and Cullison. Our assumption of original jurisdiction is not urgent because the harm alleged by Petitioners can be alleviated during the pendency of the action by enjoining Respondent from enforcing SB 632. We have made clear that our original jurisdiction in this type of case is concurrent with the district courts' jurisdiction. If we have authority to enjoin Respondent from enforcing SB 632, the district courts, which have unlimited original jurisdiction, possess similar authority. 

¶13 The benefit of allowing cases to begin in the district court is that they are trial courts. District courts are well-suited to take evidence and conduct hearings. We are not. This Court's primary constitutional duty is to function as an appellate court. While there may be rare cases that prevail upon us to enter declaratory judgment in our concurrent original jurisdiction, this is not one of them.

* * *

¶14 I dissent from the majority opinion and do not reach the merits of this dispute.

FOOTNOTES

In this case, the majority recognizes standing based on two principles. First, the majority asserts Petitioners have standing because they are a taxpayer injured by the unlawful expenditure of state funds. Maj. Op. ¶¶ 13--14. Second, the majority recognizes standing based on Petitioners' injury in not being allowed to vote for business court judges. Id. ¶¶ 15--17.

These are not particularized injuries, so there can be no particularized interim or final remedy. Petitioners' alleged injury with respect to disbursement of state funds is only remedied by prohibiting the State from expending any funds to implement SB 632. Similarly, the way to remedy Petitioners' alleged voter-based injury is to prohibit the non-elective appointment of business court judges. Since these Petitioners have the same purported injury as every other voter and every other taxpayer, there is no way to tailor a remedy specifically to the Petitioners. It's all or nothing.

The U.S. Supreme Court has recently curtailed federal district courts' authority to enjoin the federal government from enforcing a regulation against nonparties. Trump v. CASA, Inc., 606 U.S. 831, 859 (2025). This has limited the issuance of nationwide injunctions. Technically, the interim relief granted by this Court (and which could have been issued by a district court) is not analogous to a federal nationwide injunction because it does not enjoin the State from enforcing a statute against nonparties. But because these Petitioners have alleged a purported injury shared by every voter and taxpayer in Oklahoma, granting Petitioners relief necessarily means Respondent cannot enforce SB 632.

I do not address the constitutionality or prudence of the broad standing doctrines applied in this case. However, as long as we recognize these broad standing doctrines, a petitioner cannot demonstrate urgency sufficient to warrant concurrent original jurisdiction if a district court can enter interim relief that negates the pressing need for a final resolution.

 
 
 
 
 
 
 
 
 
 The Oklahoma Supreme Court
 2100 N. Lincoln Blvd., Suite 1
 Oklahoma City, OK 73105